IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREGORY HOLLENBACH; ROBERT KOHL; and JOHN CARDONA, as individuals,<br><br>          Plaintiffs,<br><br>v.<br><br>CHRIS BURBANK; RICHARD FINDLAY; TIM DOUBT; MORGAN SAYES; TOM GALLEGOS; MELODY GRAY; RALPH BECKER; ANNETTE PUGMIRE; JULIO GARCIA; TINA HOSE; ELENA DICUS; each as individuals; and SALT LAKE CITY, through its Police Department and its Civil Service Commission; and DOES I-X, unknown persons in interest,<br><br>          Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:12-CV-608 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Dismiss filed by Defendants Salt Lake City Civil Service Commission ("CSC"), Annette Pugmire, Julio Garcia, Tina Hose, and Elena Dicus (collectively, "Defendants"). Defendants seek dismissal of Plaintiffs' Sixteenth and Seventeenth causes of action. For the reasons discussed below, the Court will grant the Motion.

I.  BACKGROUND

Plaintiff Gregory Hollenbach ("Hollenbach") was at all relevant times a member of the Salt Lake City Police Department (the "Department") and the Fraternal Order of Police. Hollenbach was eventually terminated from his employment. The Sixteenth and Seventeenth causes of action concern Hollenbach's appeal of his termination to the CSC.

The Utah Municipal Code permits cities to establish a civil service commission, consisting of three members appointed by the city legislative body for staggered six year terms.[1] No more than two members of the civil service commission may be of the same political party.[2] Additionally, "no member of the civil service commission shall during his tenure of office hold any other public office, or be a candidate for any other public office."[3] "In case of misconduct, inability or willful neglect in the performance of the duties of the office by any member, the member may be removed from office by the board of city commissioners by a majority vote of the entire membership, but the member shall, if he so desires, have opportunity to be heard in defense."[4]

The civil service commission may make all necessary rules and regulations to carry out its duties.[5] The civil service commission also appoints

> as secretary one of the available officers or employees of the city, who shall act
> and serve without additional compensation. The secretary shall keep a record of
> all meetings of the civil service commission and of its work and shall perform
> such other services as the commission may require, and shall have the custody of
> the books and records of the commission.[6]

The civil service commission acts as the appeal authority for civil service employees who are suspended or discharged.[7] "The suspended or discharged person shall be entitled to appear in

---

[1] UTAH CODE ANN. § 10-3-1003.

[2] *Id.* § 10-3-1004.

[3] *Id.*

[4] *Id.*

[5] *Id.* § 10-3-1006.

[6] *Id.* § 10-3-1005.

[7] *Id.* § 10-3-1012(2).

person and to have counsel and a public hearing."[8]   Any final action or order of the commission

may be appealed to the Utah Court of Appeals for review.[9]

Salt Lake City has established a civil service commission.  Defendants Hose, Garcia, and

Dicus are the current members of the CSC.  The CSC has appointed Defendant Pugmire as its

secretary.

Plaintiff Hollenbach was terminated on November 8, 2013.  Plaintiff's appeal rights were

explained in the termination letter:

> You may appeal this discipline by filing a written request for appeal with the
> Secretary of the Civil Service Commission, Annette Pugmire, at 451 South State
> Street, Room 115, Salt Lake City, Utah 84111, within five (5) business days of
> your receipt of this letter.[10]

Plaintiff, through his counsel, requested an appeal in a letter dated November 11, 2013.[11]

This letter was sent to Defendant Pugmire via certified mail.  An indication from the United

States Post Office indicates that notice was left at the address listed on the envelope on

November 13, 2013.[12]  However, it appears that the letter was not actually signed for and

delivered until November 19, 2013.[13]

Salt Lake City, through its counsel, objected to the jurisdiction of the CSC to consider

Hollenbach's appeal of his termination.[14]  The City contended that Hollenbach's appeal was

---

[8] *Id.* § 10-3-1012(3).

[9] *Id.* § 10-3-1012.5.

[10] Docket No. 83 Ex. A1, at 5.

[11] *Id.* Ex. A2.

[12] *Id.*

[13] *Id.* Ex. A4.

[14] *Id.* Ex. A3.

required to be filed by November 18, 2013, but was not actually delivered until November 19, 2013, one day late.[15]  Hollenbach, through his representative, responded to the City's objection.[16]

The CSC held a hearing on December 19, 2013.  The City was represented by counsel and Plaintiff Hollenbach was represented by an administrative representative.  Both parties submitted evidence and argument at the hearing.  On February 10, 2014, the CSC determined that it lacked jurisdiction to consider Hollenbach's appeal because his notice of appeal was untimely.[17]  The CSC interpreted its rules as requiring the appeal actually be delivered within the five-day period.  In support, the CSC relied on *Maverik Country Stores, Inc. v. Industrial Commission of Utah*.[18]  Based upon this interpretation, the CSC determined that Hollenbach's appeal was untimely because it was not delivered by November 18, 2013.  Consequently, the CSC determined that it lacked jurisdiction to consider the appeal.  Hollenbach is currently seeking review of that determination from the Utah Court of Appeals, as is permitted by Utah law.

On February 28, 2014, Plaintiff Hollenbach sought to file a Second Amended Complaint based, in part, on the actions discussed above.  Defendants opposed Plaintiff's request, arguing that the proposed amendment would be "futile because the four new defendants the Plaintiffs

---

[15] *Id.*

[16] *Id.* Ex. A4.

[17] *Id.* Ex. A1.

[18] 860 P.2d 944 (Utah Ct. App. 1993).

4

seek to add are all immune from suit under the quasi-judicial immunity doctrine" and "because the added causes of action fail to state a claim upon which relief can be granted."[19]

The Magistrate Judge granted Plaintiff's request to file a Second Amended Complaint. The Magistrate Judge found that Defendants' arguments concerning futility "do appear to carry some weight and persuasive value."[20]  However, the Magistrate Judge believed that "there are some questions about the applicability of the doctrine [of quasi-judicial immunity] in this case."[21]  The Magistrate Judge further found that "Plaintiffs['] claims do provide enough notice to survive Defendants['] opposition at this juncture based upon the preference to afford a litigant an opportunity to test their claims on the merits."[22]

Defendants objected to the Magistrate Judge's decision.  The Court overruled that objection on June 24, 2014.[23]  The Court noted that Defendants focused their objection on the application of the factors set out in *Moore v. Gunnison Valley Hospital*,[24] but that Defendants had not discussed that case before the Magistrate Judge.  The Court found that Defendants' "opposition filed before the Magistrate Judge did not contain the majority of the arguments raised in their Objection."[25]  The Court refused to consider arguments raised for the first time in Defendants' objection.  The Court went on to note that the Magistrate Judge's decision concerned a nondispositive pretrial matter and that the Court was "not left with the definite and

---

[19] Docket No. 55, at 2.

[20] Docket No. 62, at 3.

[21] *Id.*

[22] *Id.*

[23] Docket No. 73.

[24] 310 F.3d 1318 (10th Cir. 2002).

[25] Docket No. 73, at 3.

firm conviction that a mistake has been committed."[26]  Therefore, Defendants' objection was overruled.

Plaintiffs filed their Amended Complaint on July 1, 2014.  The instant Motion was filed on September 10, 2014.

## II.  MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[27]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[28] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[29]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[30]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[31]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to
> dismiss.  Determining whether a complaint states a plausible claim for relief will

---

[26] *Id.* at 4.

[27] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[30] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[31] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[32]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[33] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[34]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[35]

## III.  DISCUSSION

### A.   LAW OF THE CASE

Before reaching the merits of the Motion to Dismiss, the Court must first consider Plaintiff's argument that the issues before the Court have already been decided and constitute law of the case.  Plaintiff bases this argument on the fact that the Magistrate Judge  permitted Plaintiff to file a Second Amended Complaint—despite Defendants making similar arguments to those made in the instant Motion—and that this Court overruled Defendants' objection to the Magistrate Judge's ruling.

---

[32] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[33] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[34] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[35] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[36] "The rule is one of expedition, designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided."[37]  Of course, Rule 54(b) provides,

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[38]

To determine this issue, it is helpful to consider what exactly it was that the Magistrate Judge and this Court considered and the rulings each made.  As set forth above, Defendants objected to Plaintiff's proposed amendment, making similar arguments to those made in their Motion to Dismiss.  The Magistrate Judge acknowledged that Defendants' arguments carried some weight, but ultimately allowed amendment because the application of the doctrine of quasi-judicial immunity in this case was not clear.  Further, the Magistrate Judge noted the preference that claims be decided on the merits and that Federal Rule of Civil Procedure 15 dictates that leave to amend should be freely given.  Thus, the Magistrate Judge did not hold that Defendants were not entitled to immunity, only that there was some question as to the applicability of that doctrine and that amendment should be permitted to allow for a full resolution of that issue.

This Court was asked to review the Magistrate Judge's decision.  The Court ultimately concluded that the Magistrate Judge's decision was not erroneous.  As with the Magistrate Judge, the Court did not directly decide whether Defendants were entitled to immunity.  In fact, the

---

[36] *Arizona v. California*, 460 U.S. 605, 618 (1983).

[37] *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

[38] Fed. R. Civ. P. 54(b).

Court refused to consider many of the arguments made by Defendants because they were not presented to the Magistrate Judge in the first instance. Based upon this, the law of the case doctrine is inapplicable here. The Court has not decided the issues presented in the Motion to Dismiss and, even if it had done so implicitly, the Court retains the ability to reconsider any non-final order. Therefore, the Court can consider the arguments raised in Defendants' Motion.

B.      QUASI-JUDICIAL IMMUNITY

The Supreme Court has extended absolute immunity to certain individuals "who perform functions closely associated with the judicial process."[39] Courts take a functional approach to determining immunity. "Absolute immunity flows not from rank or title or location within the government, but from the nature of the responsibilities of the individual official."[40] To assist in this determination, the Supreme Court has identified several factors for courts to consider in determining whether to grant absolute immunity. These factors include,

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.[41]

The Court will consider each of these factors in turn.

    1.      *Harassment or Intimidation*

The first factor to consider is the need to assure that the individual can perform his functions without harassment or intimidation. The need to assure that the members of the CSC may perform their duties without harassment or intimidation is obvious here. As set forth above,

---

[39] *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).

[40] *Id.* at 201 (internal citation and quotation marks omitted).

[41] *Id.* at 202 (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

Utah law provides for the CSC to act as the appeal authority for civil service employees who are suspended or discharged.  It is only too easy to imagine a disgruntled employee taking out his frustrations on the members of the commission that hears his appeal from his suspension or discharge.  As the Supreme Court recognized in *Butz*, "[t]he loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus."[42]  Absolute immunity is applied to assure that such individuals "can perform their respective functions without harassment or intimidation."[43]  Thus, this factor weighs in favor of Defendants.

    2.    *Presence of Safeguards*

The second factor considers the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct.  Under Utah law, "[t]he suspended or discharged person shall be entitled to appear in person and to have counsel and a public hearing."[44]  In this instance, Hollenbach was permitted to appear before the CSC and was represented during that process.  Plaintiff's representative was allowed to submit evidence and argument in support of Plaintiff's position, which the CSC considered in making its ruling.  Further, Hollenbach has the right to appeal the decision of the CSC and he has exercised that right.

Plaintiff attacks the sufficiency of these procedural safeguards based on the fact that the CSC ultimately found that it lacked jurisdiction to hear his appeal, rather than reviewing his termination on the merits.  However, the fact that the CSC decided his appeal on procedural grounds does not negate the fact that a variety of safeguards did exist.  The City challenged the

---

[42] *Butz*, 438 U.S. at 512.

[43] *Id.*

[44] UTAH CODE ANN. § 10-3-1012(3).

CSC's jurisdiction to hear Plaintiff's appeal, Plaintiff had the opportunity to respond to that challenge, Plaintiff was able to present evidence and argument at the hearing held by the CSC, and Plaintiff has taken advantage of the ability to appeal the Commission's decision.  Based upon these facts, the Court finds that this factor weighs in favor of Defendants.

       3.     *Insulation from Political Influence*

"The third factor involves the presence of political influence in the decision-making process. . . .  As with any judicial process, independence of the adjudicators is essential."[45]

Utah law provides certain safeguards to assure the independence of the members of the CSC.  For instance, no more than two members of the CSC may be of the same political party and no member may hold any other public office, or be a candidate for any other public office.  However, the members of the CSC are appointed by members of the city's legislative body and "may be removed from office by the board of city commissioners by a majority vote of the entire membership."[46]  Importantly, though, there is no evidence or allegation that the Salt Lake City Police Department or any of its leadership—against whom the majority of Plaintiffs' allegations are lodged—play any role in the selection, removal, or day-to-day operations of the CSC.

This last fact distinguishes this case from *Cleavinger*, in which the Supreme Court found that members of a prison's discipline committee were not entitled to absolute immunity.  The Court stated,

> the members of the committee, unlike a federal or state judge, are not "independent"; to say that they are is to ignore reality.  They are not professional hearing officers, as are administrative law judges.  They are, instead, prison officials, albeit no longer of the rank and file, temporarily diverted from their

---

[45] *Moore*, 310 F.3d at 1318.

[46] UTAH CODE ANN. § 10-3-1004.

usual duties.  They are employees of the Bureau of Prisons and they are the direct
subordinates of the warden who reviews their decision.  They work with the
fellow employee who lodges the charge against the inmate upon whom they sit in
judgment.  The credibility determination they make often is one between a co-
worker and an inmate.  They thus are under obvious pressure to resolve a
disciplinary dispute in favor of the institution and their fellow employee.  It is the
old situational problem of the relationship between the keeper and the kept, a
relationship that hardly is conducive to a truly adjudicatory performance.[47]

Unlike the prison discipline committee in *Cleavinger*, there is no indication that the

members of the CSC are employees of the Salt Lake City Police Department or the City itself.

Nor is there anything to suggest that the CSC reviews decisions made by those with supervisory

authority over them or that the City reviews the decisions of the CSC.  Rather, the members of

the CSC are appointed by the City's legislative body and can only be removed in cases of

misconduct, inability, or willful neglect in the performance of their duties.  The decisions of the

CSC are reviewed by the Utah Court of Appeals.  Thus, the CSC acts independently of the Police

Department and the City.  Therefore, this factor weighs in favor of Defendants.

    *4.*      *Importance of Precedent*

The fourth factor considers the importance of precedent, which involves both internal and

external precedent.[48]  In this case, the CSC examined both its own internal rules as well as

external precedent.  While Plaintiff argues that the Commission's interpretation of precedent was

incorrect, it cannot be disputed that the CSC made its decision based, in part, on its interpretation

of its rules and Utah case law.  Any error can be reviewed and corrected by the Utah Court of

Appeals.  Therefore, this factor weighs in favor of Defendants.

    *5.*      *Adversary Nature of the Process*

---

[47] *Cleavinger*, 474 U.S. at 203–04 (internal citations omitted).

[48] *Moore*, 310 F.3d at 1318.

The fifth factor considers the adversarial nature of the process.  As discussed, the City objected to the Commission's jurisdiction to hear Plaintiff's appeal and Plaintiff was afforded an opportunity to respond.  In addition, the Commission held a hearing at which Plaintiff was permitted to present evidence and argument.  Therefore, this factor weighs in favor of Defendants.

### 6.     *Correctability of Error on Appeal*

The final factor involves the right of appeal.  By statute Plaintiff has the right to appeal the decision of the CSC.  Plaintiff has invoked that right and his appeal is currently pending before the Utah Court of Appeals.  Therefore, this factor weighs in favor of Defendants.

Plaintiff argues that this factor should not weigh in favor of granting immunity because, even if he is successful on appeal, the matter will likely only be remanded for a decision on the merits of his claim.  What may or may not happen on appeal and the relief the Utah courts or the CSC may provide is not an issue upon which the Court will opine.  Nevertheless, such issues have no bearing on whether immunity should be granted.  It cannot be disputed that Plaintiff has the right to appeal the decision of the CSC and that he has done so.

Based upon all of the above, the Court finds that immunity should be granted to the members of the CSC.  Plaintiff recognizes that Defendant Pugmire's immunity claim "rises and falls with the immunity (or lack thereof) regarding the other CSC Defendants."[49]  As the Court finds that the other Commission members are entitled to immunity, so is Defendant Pugmire.  Therefore, Plaintiff's claims against the moving Defendants will be dismissed and the Court need not address the other arguments made in Defendants' Motion.

---

[49] Docket No. 86, at 14.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 83) is GRANTED.

Plaintiff Hollenbach's Sixteenth and Seventeenth causes of action are dismissed.

Defendants Annette Pugmire, Julio Garcia, Tina Hose, and Elena Dicus are dismissed from this

case.

The hearing set for January 26, 2015, is STRIKEN.

DATED this 12th day of January, 2015.

BY THE COURT:

Ted Stewart
United States District Judge