IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN CARDONA,<br><br>               Plaintiff,<br><br>v.<br><br>CHRIS BURBANK, in his individual capacity; TIM DOUBT, in his individual capacity; and SALT LAKE CITY CORPORATION, through its Police Department; and DOES I-X, unknown persons in interest,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:12-CV-608 TS-BCW<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the

reasons discussed below, the Court will grant the Motion as to Plaintiff's federal-law claims and

decline to exercise jurisdiction over his remaining state-law claim.

## I. BACKGROUND

Plaintiff John Cardona joined the Salt Lake City Police Department (the "Department")

in 1986. Plaintiff was born in Puerto Rico and identifies as Hispanic/Latino. During his career,

Plaintiff was promoted to the rank of sergeant, lieutenant, and finally captain in 2006. Plaintiff

retained the rank of captain until he retired in December 2014.

On January 14, 2007, Plaintiff transferred from the Operations Bureau to the

Management Services Division of the Administration Bureau. Plaintiff assumed oversight of the

Department's Crisis Intervention Team ("CIT"). Shortly after arriving in the Management

Services Division, Plaintiff developed concerns regarding the CIT program. As a result, Plaintiff implemented certain modifications to the program.

After becoming aware of these changes, then-Chief of Police Chris Burbank ("Burbank") held a meeting with Plaintiff and others. Burbank directed Plaintiff to not "mess" with the CIT program. The parties dispute whether Plaintiff complied with Burbank's direction. However, it is undisputed that, as a result of Plaintiff's conduct, the Department's Internal Affairs Unit ("IA") opened an investigation into Plaintiff at Burbank's request. In July 2007, the IA sustained an allegation that Plaintiff had violated the Department's policy requiring supervisors to display respect toward subordinate-ranked personnel. As a result, Plaintiff was suspended for ten days without pay by Burbank. In his decision letter, Burbank stated that he was concerned about a possible pattern of behavior, noting that Plaintiff had received three similar or like complaints in the past.[1]

In September 2007, Plaintiff was transferred back to Patrol. The culture within the Department views a transfer back to Patrol as being a form of punishment.

In June 2009, a group of officers formed a local chapter of the Fraternal Order of Police ("FOP"). The principal purpose of forming the FOP was to obtain an automatic attorney to represent members in connection with any investigation or disciplinary proceeding. Sometime after it was formed, Plaintiff joined the FOP. Plaintiff's stated reason for joining the FOP was to obtain automatic legal representation. At his deposition, Plaintiff stated that he "was narrowly

_____

[1] Docket No. 141 Ex. H.

focused on the legal representation."[2]  Defendants Burbank and Doubt were unaware of

Plaintiff's FOP membership until Plaintiff filed a notice of claim in March 2012.

In January 2010, Burbank reorganized the Department.  Instead of three Bureaus, the

Department would have eight Divisions.  The Divisions would be headed by a newly formed

position of Deputy Chief and the position of Assistant Chief was eliminated.  Burbank was

vested with the sole discretion in selecting Deputy Chiefs.  All three of the then-existing

Assistant Chiefs were appointed to be Deputy Chiefs.  In addition, Burbank selected four

captains and one lieutenant to fill the remaining positions.  Plaintiff was not selected to be a

Deputy Chief.  Burbank, who had known Plaintiff for years, testified that he did not select

Plaintiff to be a Deputy Chief because he had a number of concerns with Plaintiff's ability to act

in a leadership capacity.  The two other captains at the time—Kyle Jones and Carroll Mays, both

of whom are Caucasian—were similarly not selected as Deputy Chief.

In April 2011, Plaintiff was transferred to the Facilities Division under Deputy Chief Tim

Doubt ("Doubt").[3]  Doubt assigned Plaintiff to oversee the crime lab.  In August 2011, Plaintiff

was transferred to the sex crime offender registry after his position in the Facilities Division

became redundant.  There is testimony from a number of individuals that it was irregular to have

a person with Plaintiff's rank assigned to fill these positions.

In January 2013, Plaintiff was transferred back to Patrol under Deputy Chief Lee

Dobrowolski ("Dobrowolski").  Dobrowolski's paternal grandmother is from Spain and

Dobrowolski considers himself both Hispanic and Caucasian.  Plaintiff asked Deputy Chief

---

[2] *Id.* Ex. J, at 39:16–17.

[3] Plaintiff had previously investigated Doubt's wife, who had also worked for the
Department.  As a result of Plaintiff's investigation, Doubt's wife's employment was terminated.

Dobrowolski to make him his assistant commander. Dobrowolski declined and assigned Plaintiff the position of watch commander feeling that assignment was best for the Department and the Division.[4] The watch commander position was typically filled by a lieutenant.

Isaac Atencio ("Atencio") became the Deputy Chief of Patrol after Dobrowolski left the Department. Atencio is Mexican. Atencio similarly denied a request by Plaintiff to be made an assistant commander.

In approximately May 2014, the Department was reorganized in order to form the Metro Support Bureau. This reorganization resulted in a reduction in the number of individuals assigned to fill the role of watch commander, the position held by Plaintiff. As a result, Atencio modified the schedule options for all watch commanders. Based on his seniority, Plaintiff was given the first pick of his schedule. Plaintiff had two options. Plaintiff could continue working the day shift and would be given Tuesdays, Wednesdays, and Thursdays off. Alternatively, he could work the afternoon shift and would be given Fridays, Saturdays, and Sundays off. Plaintiff selected the afternoon shift to maintain having weekends off. Plaintiff worked that shift until he retired from the Department in December 2014.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[4] *Id.* Ex. K, at 22:1–8.

[5] Fed. R. Civ. P. 56(a).

presented.[6]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

## III.  DISCUSSION

Plaintiff's Fourth Amended Complaint asserts the following causes of action: violation of Title VII; failure-to-promote in violation of 42 U.S.C. § 1981; violation of Utah Code Ann. § 57-21-1; infringement of Plaintiff's First Amendment right of freedom of association; conspiracy in violation of 42 U.S.C. § 1983; failure to train and supervise under § 1983; constructive discharge; and injunctive relief.[8]  The Court will address these claims in turn.

### A.    TITLE VII[9]

#### 1.    Exhaustion of Administrative Remedies

Title VII requires a plaintiff to file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred."[10]  "A claim is time barred if it is not filed within these time limits."[11]  "Each discrete discriminatory act starts a new clock for filing

---

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[8] The remaining causes of action in the Fourth Amendment Complaint have been previously dismissed, do not relate to Plaintiff, or have been withdrawn.

[9] The Court previously dismissed Plaintiff's Title VII claim against the individual Defendants in their individual capacities.  Docket No. 34, at 17.  "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."  *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (quoting *Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1125 (10th Cir. 1993)).  Thus, the Court will analyze Plaintiff's claims as against the City.

[10] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).

[11] *Id.* at 109.

charges alleging that act."[12] "Discrete unlawful practices include termination, failure to promote, denial of transfer, and refusal to hire."[13] "[W]hen a plaintiff pursues several disparate treatment claims based on discrete discriminatory acts, the limitations period will begin to run for each individual act from the date on which the underlying act occurs."[14] "[E]ach discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[15]

Plaintiff filed a single Charge of Discrimination on February 6, 2012.[16] Thus, any discrete acts of discrimination that occurred prior to April 12, 2011, are barred. Further, as will be discussed below, because Plaintiff never filed additional Charges, any discrete acts of discrimination that occurred after February 6, 2012, are barred.

In his Charge, Plaintiff alleged he was discriminated against in 2007 and thereafter based on his complaints concerning the CIT program. In his Fourth Amended Complaint, Plaintiff alleges that Burbank retaliated against him by filing an unjustified IA complaint based on Plaintiff's actions related to CIT. Plaintiff also complains about the 10-day suspension he received after the IA sustained an allegation against him. Additionally, Plaintiff complains about his 2007 transfer to Patrol. As stated, any discrete acts of discrimination that occurred prior to April 12, 2011, are barred. Thus, all of these claims are barred because of Plaintiff's failure to timely exhaust his administrative remedies.

---

[12] *Id.* at 113.

[13] *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012).

[14] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003).

[15] *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

[16] Plaintiff signed the Charge of Discrimination on January 30, 2012. Regardless of the date used, the Court's analysis does not change.

Plaintiff also alleges that in April 2011, he was reassigned to the Facilities Division and he believes this reassignment was retaliatory. According to his employment history, this reassignment occurred on April 3, 2011.[17] Therefore, this claim is also barred because of Plaintiff's failure to timely exhaust his administrative remedies.

Plaintiff also complains the he was re-assigned and demoted in August 22, 2011. This claim relates to his transfer to the sex crime offender registry and is timely.

Plaintiff's EEOC Charge also alleged that he was subjected to ongoing discrimination and retaliation, and Plaintiff checked the box indicating that there was "continuing action." Plaintiff further claimed that several Caucasian employees were promoted above him, despite the fact that they were less qualified and had less tenure. Reading the Charge liberally, the Court finds that Plaintiff has adequately exhausted his administrative remedies for a failure-to-promote claim within the applicable limitations period.

Plaintiff's Complaint includes a number of allegations of discrete acts of discrimination that occurred after the filing of his EEOC Charge. Plaintiff argues that was not required to file additional EEOC charges and that the Court can consider these acts. Courts, including the Tenth Circuit, previously recognized a continuing violation theory. However, in *National Railroad Passenger Corp. v. Morgan*, the Supreme Court held that exhaustion is required for each discrete act of discrimination, "such as termination, failure to promote, denial of transfer, or refusal to hire."[18] Since then, the Tenth Circuit has held that "[t]he rule is equally applicable . . . to

---

[17] Docket No. 141 Ex. C.
[18] 536 U.S. at 110–13, 114.

discrete claims based on incidents occurring *after* the filing of Plaintiff's EEO complaint."[19]

Thus, for each discrete act of discrimination, Plaintiff was required to file an EEOC charge

within the applicable time period, even if those discrete acts occurred after the filing of the

original Charge.[20] Those cases cited by Plaintiff, holding that no further charge is required, are

inapposite because they fail to comport with Tenth Circuit precedent. Indeed, the court in

*Spellman v. Seymour Tubing, Inc.*,[21] one of the cases cited by Plaintiff, specifically states that if

it were bound by Tenth Circuit law, the plaintiff's claims would fail.[22] Thus, the Court rejects

Plaintiff's invitation to follow out-of-circuit law that is inconsistent with binding Tenth Circuit

precedent. With Plaintiff having failed to file an additional Charge, those claims based on

discrete acts that occurred after February 6, 2012, are barred.

Plaintiff argues that Defendants have waived or should be estopped from asserting a

failure-to-exhaust defense. The Tenth Circuit distinguishes "between a failure to timely file an

administrative charge, which is not jurisdictional, and a failure to file an administrative charge at

all, which is a jurisdictional bar."[23] While timeliness is subject to waiver, estoppel, and equitable

tolling, failure to exhaust at all is a complete bar to suit. Thus, on those discrete acts where

---

[19] *Martinez*, 347 F.3d at 1210–11; *see also Duncan v. Manger, Dep't of Safety, City & Cty of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (affirming dismissal of claim because plaintiff failed to file an additional EEOC charge alleging retaliatory act that occurred after her original EEOC charge).

[20] *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014) (stating that "federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents").

[21] No. 4:06-CV-0013-DFH-WGH, 2007 WL 1141961 (S.D. Ind. Apr. 12, 2007).

[22] *Id.* at *2 ("If the court were bound to apply the Tenth Circuit's holding in *Martinez*, Spellman's retaliation claim would no doubt fail.").

[23] *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).

Plaintiff failed to file a Charge, those claims are barred and not subject to waiver or estoppel. Regardless, Plaintiff's waiver/estoppel argument is fatally flawed. Defendants' Answer clearly asserts that Plaintiff failed to exhaust his administrative remedies.[24] In fact, all of the Answers filed in this case raise the issue of failure to exhaust administrative remedies.[25] Thus, Plaintiff cannot now claim that he is somehow surprised by Defendants' assertion that he failed to exhaust his administrative remedies.

Plaintiff also argues that this affirmative defense was inadequately pleaded. However, Plaintiffs' argument hinges on his belief that Defendants failed to assert a failure to exhaust defense and only stated that his claims were barred by the applicable statute of limitations. As stated, this is simply incorrect. Defendants specifically stated that Plaintiff failed to exhaust his administrative remedies. Thus, the Court concludes that Defendants did adequately assert this defense. Moreover, Plaintiff's claim that the Answer is insufficient under the *Twombly/Iqbal* standard could have been raised in a motion for judgment on the pleadings. Having failed to do so, Plaintiff cannot be heard to complain about Defendants' arguments. In sum, there is no basis to conclude that Defendants waived this argument or should be estopped from making it.

Plaintiff also asserts, for the first time in his response to Defendants' Motion, that he is asserting a hostile work environment claim. Hostile work environment claims "often involve a series of incidents that span a period of longer than 300 days."[26] Thus, the Supreme Court has held that "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of

---

[24] Docket No. 126, at 17.

[25] Docket No. 36, at 25; Docket No. 79, at 25.

[26] *Duncan*, 397 F.3d at 1308.

acts comprising that hostile work environment."[27]  Plaintiff argues that because at least one act occurred within the statutory time period, the Court can consider all of his claims.

Plaintiff's hostile work environment claim suffers from two defects.  First, Plaintiff failed to exhaust his administrative remedies as to this claim.  Second, he failed to plead a hostile work environment in any of his many Complaints.

As to the first point, the unpublished Tenth Circuit case of *Mitchell v. City and County of Denver*[28] is persuasive.  There, as here, the plaintiff attempted to assert a hostile work environment claim.  To determine whether the plaintiff had exhausted his administrative remedies, the court examined the charge of discrimination.  Like here, the plaintiff checked the boxes marked "race" and "retaliation" under the section titled "cause of discrimination."[29]  The plaintiff, like Plaintiff here, also checked the box for "continuing action."[30]  The plaintiff went on to state that he was not promoted due to his race and was retaliated against for engaging in protected activity.[31]

> He supported this claim in his "Discrimination Statement," alleging: (1) he had always been a "satisfactory to above-satisfactory" employee, (2) three Caucasian males with less seniority and experience had been promoted in the last six months, (3) throughout this period he had consistently complained to his superiors regarding what he perceived to be discriminatory treatment, (4) he had filed a previous charge of discrimination around 1986, (5) [a supervisor] allegedly stated, "this nigger [Mitchell] ain't going anywhere as long as he works for me," and (6) he remained employed "at a lesser step than he should be."[32]

---

[27] *Id.* (citing *Morgan*, 536 U.S. at 115).

[28] 112 F. App'x 662 (10th Cir. 2004).

[29] *Id.* at 667.

[30] *Id.*

[31] *Id.*

[32] *Id.* (second alteration in original)

Reading the charge liberally, the Tenth Circuit concluded that "his 'failure to promote' claim could not reasonably be expected to lead to a hostile work environment/racial harassment claim."[33] "Nothing in [the plaintiff's] EEOC complaint indicates a hostile work environment."[34] In particular, the court noted that the "EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment."[35] As a result, the plaintiff's hostile work environment claim was dismissed for failure to exhaust.

The same result is required here. In his Charge, Plaintiff stated that he was Hispanic and was "subjected to ongoing discrimination because of [his] race."[36] To support this claim, Plaintiff stated that "one of [his] superiors filed an insubordination complaint against [him]," which "initiated ongoing retaliatory acts against [him]."[37] Plaintiff stated that he was "suspended without pay and subsequently demoted and re-assigned to patrol" where he worked for a number of years.[38] Plaintiff further stated that "[s]everal Caucasian employees were promoted who were less qualified and had less tenure."[39] Plaintiff went on to state that he was again reassigned in April 2011, which he believed was retaliatory. Plaintiff also complained that he was re-assigned and demoted in August 2011. Plaintiff stated: "I believe I have been repeatedly denied promotions which have consistently been awarded to Caucasian employees. I

---

[33] *Id.*

[34] *Id.* at 668.

[35] *Id.*

[36] Docket No. 141 Ex. S.

[37] *Id.*

[38] *Id.*

[39] *Id.*

believe I have been subjected to ongoing discrimination and retaliation."[40]  Plaintiff concluded: "I believe I have been discriminated against because of my race.  I also believe I have been subjected to ongoing retaliation.  I believe the actions of this employer are in violation of Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as amended."[41]

Like the charge in *Mitchell*, there is nothing in Plaintiff's EEOC Charge that would provide notice of a hostile work environment claim.  "To lay a factual foundation for a hostile work environment claim, [Plaintiff] must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[42] Plaintiff's Charge, like the charge in *Mitchell*, does not do this.  Therefore, the Court finds that he has failed to exhaust his administrative remedies as to his hostile work environment claim.

The second fatal flaw is that, even if Plaintiff exhausted his administrative remedies, Plaintiff never pleaded a hostile work environment claim in any of his complaints.  A careful review of the allegations in the Amended Complaint,[43] Second Amended Complaint, Third Amended Complaint,[44] and Fourth Amended Complaint reveals no hostile work environment claim.  Particularly telling is the fact that one of Plaintiff's former co-plaintiffs, Robert Kohl, did

---

[40] *Id.*

[41] *Id.*

[42] *Mitchell*, 112 F. App'x at 668 (quoting *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

[43] Plaintiff was not named in the initial Complaint.

[44] Plaintiff's Third Amended Complaint was never formally filed, but was attached to Plaintiff's Motion to File Third Amended Complaint.  Docket No. 116 Ex. A.

assert a hostile work environment claim.[45]  This reveals that Plaintiff's counsel, who also represented Mr. Kohl, knew how to assert a hostile work environment claim, but chose not do so with respect to Plaintiff.  Thus, not only did Plaintiff not exhaust his hostile work environment claim, he never brought such a claim in this case, despite having multiple opportunities to amend his complaint.  Therefore, the Court will not consider Plaintiff's hostile work environment claim and will instead focus on those two acts of discrimination for which Plaintiff has exhausted his administrative remedies: a failure-to-promote claim and a discriminatory demotion claim based on his August 2011 reassignment.[46]

### 2.   Discrimination

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[47]  "If a plaintiff offers no direct evidence of discrimination, which is often the case, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*."[48]

> Under this framework, a plaintiff must first make out a prima facie case of discrimination . . . .  After the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

---

[45] Mr. Kohl's claim was under the ADA, not Title VII.  Docket No. 1 ¶ 114; Docket No. 2 ¶ 174; Docket No. 74 ¶ 192.

[46] There is a discrepancy between the Charge and the Fourth Amended Complaint concerning Plaintiff's demotion claim.  Plaintiff's Charge references the August 2011 assignment while the Fourth Amended Complaint references the 2013 assignment to the Watch Commander.  Docket No. 123 ¶ 94.  However, the Fourth Amended Complaint does include allegations concerning the August 2011 assignment.  *Id.* ¶¶ 43–53.  Therefore, because this claim was administratively exhausted, the Court will consider it, even though it is somewhat unclear whether Plaintiff meant to assert this transfer as part of his Title VII claim.

[47] 42 U.S.C. § 2000e-2(a)(1).

[48] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

actions.  If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely "pretextual."[49]

As set forth above, Plaintiff has two claims for which he has exhausted his administrative remedies: a failure-to-promote claim and a discriminatory demotion claim.  "[A] plaintiff alleging a failure-to-promote claim must initially establish a prima facie case, demonstrating that: (1) []he was a member of a protected class; (2) []he applied for and was qualified for the position; (3) despite being qualified []he was rejected; and (4) after []he was rejected, the position was filled."[50]  "To establish a prima facie case of discriminatory demotion, plaintiff must show (1) that he was within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, and (4) that the job from which he was demoted was not eliminated."[51]  Defendants appear to assume that Plaintiff can make out a prima facie case of discrimination and the Court will do the same.  Thus, the burden shifts to Defendant to articulate legitimate, nondiscriminatory reasons for its actions.  Defendants' burden is "exceedingly light."[52]

Defendants have met their burden here.  As to Plaintiff's failure-to-promote claim, the record shows that the decision whether to appoint someone to a Deputy Chief position rested solely with Burbank.  Burbank testified that, having worked with Plaintiff for years, he had serious reservations about his ability to act in a leadership capacity.  Defendants have pointed to multiple incidents, spanning a number of years, to support Burbank's perception of Plaintiff's abilities.

---

[49] *Id.* (internal citations omitted).

[50] *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).

[51] *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).

[52] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

Plaintiff attacks this justification, arguing that it is based on speculation and hearsay. However, Burbank's testimony is replete with references that his beliefs about Plaintiff's abilities were based, not only on reports from others, but also on his personal observations that were developed over years of working with and observing Plaintiff. Plaintiff also argues that summary judgment on this issue is inappropriate because Defendants' proffered reasons hinge on questions of intent, which are not properly decided at summary judgment.

Plaintiff misunderstands Defendants' burden at this stage. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."[53] Defendants' "burden is one of production, not persuasion; it 'can involve no credibility assessment.'"[54] Thus, the Court need not and is not resolving questions of intent. Instead, the Court must determine whether Defendants have submitted evidence that, "*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."[55] Defendants have met their burden by offering evidence sufficient for a trier of fact to conclude that Plaintiff was not promoted due to his performance issues.

Turning to the transfer to the Sex Offender Registry in August 2011, Burbank stated that Plaintiff was transferred to this unit because the Department was having a difficult time determining where Plaintiff would work because no one wanted to work with him.[56] James

---

[53] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).

[54] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

[55] *St. Mary's Honor Ctr.*, 509 U.S. at 507.

[56] Docket No. 141 Ex. A, at 80:4–11.

Coleman testified that Plaintiff was transferred to that unit to "make him feel like he was taking over something that he could fix."[57] Plaintiff similarly testified that Burbank told him that he was transferred to the Sex Offender Registry position so that Plaintiff could develop a program for how the unit should operate.[58] These are legitimate, nondiscriminatory reasons. Thus, as with the failure-to-promote claim, Defendants have met their burden.

With Defendants having met their burden, the burden shifts back to Plaintiff to show that Defendants' stated reasons are pretextual. "The pretext prong . . . permits a plaintiff employee to raise a triable inference that the stated reasons for the adverse action underlying an employer's ostensibly honest belief are a pretext for discrimination."[59] "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision."[60] "This is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."[61] "A plaintiff may also show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff."[62]

"In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision, we do not look to the plaintiff's

---

[57] Docket No. 153 Ex. 9, at 10:24–25.

[58] Docket No. 141 Ex. J, at 124:22–125:1; *see also id.* Ex. T ¶¶ 8–9.

[59] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311(10th Cir. 2017).

[60] *DePaula*, 859 F.3d at 970 (internal quotation marks omitted).

[61] *Id.* (internal quotation marks omitted).

[62] *Id.* (internal quotation marks omitted).

subjective evaluation of the situation."[63]  Moreover, the Court "may not second guess the

business judgment of the employer."[64]  "The relevant inquiry is not whether the employer's

proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and

acted in good faith upon those beliefs."[65]

Plaintiff argues that an inference of pretext can be drawn because he was more qualified

than those Caucasian candidates who were promoted.  To support this contention, Plaintiff

argues he had more experience than some of the promoted officers because he had more years in

the Department.  Plaintiff also points to the disciplinary records of some of the promoted

officers, arguing that his disciplinary history was less serious than some of those who were

promoted.[66]  This evidence does not raise a factual issue as to pretext.

While Plaintiff asserts that he was more qualified than a number of other officers, an

employee's "own opinions about his qualifications do not give rise to a material factual

dispute."[67]  There is no evidence to suggest that any individual selected as Deputy Chief did not

have the objective qualifications for that position.  Burbank testified that "there were many fine,

qualified individuals to choose from."[68]  "[W]here applicants are equally qualified, it is within

---

[63] *C.R. England, Inc.*, 644 F.3d at 1044 (internal quotation marks omitted).

[64] *Dewitt*, 845 F.3d at 1307 (internal quotation marks omitted).

[65] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (internal quotation marks and alterations omitted).

[66] To the extent that Plaintiff cites to disciplinary action taken against individuals after being promoted to Deputy Chief, Plaintiff has failed to show how this is relevant.

[67] *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999) (internal quotation marks and alterations omitted).

[68] Docket No. 153 Ex. 1, at 118:2–3; *Id.* at 118:18–19 ("I had many fine individuals to choose from.").

the employer's discretion to choose among them so long as the decision is not based on unlawful criteria."[69]

Here, there is no evidence that the choice not to promote Plaintiff was based on unlawful criteria. Rather, the evidence shows that Burbank chose not to promote Plaintiff because he had serious concerns about Plaintiff's abilities.[70] Instead, Burbank chose to promote other individuals that had the necessary qualifications.[71] "Evidence that a plaintiff is as qualified as another employee chosen for promotion over him or her does not raise a factual issue as to pretext."[72] Further undermining Plaintiff's assertion is the fact that two other captains—Kyle Jones and Carroll Mays, both of whom are Caucasian—were similarly not selected as Deputy Chief, and two individuals with Hispanic roots—Dobrowolski and Atencio—were selected as Deputy Chief.

Plaintiff does not argue pretext related to his demotion claim. However, there is evidence that Plaintiff's transfer to the Sex Offender registry was unusual, given his rank. As stated, Plaintiff can show pretext by demonstrating that Defendants acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision. The Department's written policy allowed the Chief of Police "to assign subordinate employees to any duty" after "consideration of the employee's qualifications and the

[69] *Colon-Sanchez v. Marsh*, 733 F.2d 78, 82 (10th Cir. 1984).

[70] Docket No. 153 Ex. 1, at 118:15–18 ("I did not feel that John had the leadership capability to do that. I believed him to be condescending towards individuals. I believed that he was self-centered in his actions.").

[71] *Id.* at 118:21–25 ("I picked who I believed to be the best for the position that was available at the time, and that changed constantly with my evaluation of people, my interaction with employees at all ranks in the police department.").

[72] *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994).

needs of the Department."[73]  Thus, Plaintiff's transfer did not contradict written policy and there

is no evidence of an unwritten Department policy.  There is evidence that Plaintiff's transfer was

unusual.  However, Jim Coleman testified that Burbank made a number of non-traditional

employment decisions during his time as Chief.[74]  Thus, while Plaintiff's reassignment may have

been unusual, there is no evidence that it was contrary to Department custom.  Thus, Plaintiff has

failed to show that Defendants' employment decisions were pretextual, and summary judgment

is appropriate on his Title VII claim.

B.      42 U.S.C. § 1981

        Plaintiff brings a claim under § 1981 based on the fact that he was not promoted to

Deputy Chief.  Section 1981 prohibits "discrimination in private employment on the basis of

race."[75]  Claims under § 1981 are analyzed in the same manner as those under Title VII.[76]

Plaintiff's § 1981 failure-to-promote claim fails for the same reason his Title VII failure-to-

promote claim fails.  Therefore, summary judgment is appropriate.

C.      42 U.S.C. § 1983

        Plaintiff asserts three separate causes of action under § 1983.  The Court will discuss each

in turn.

---

[73] Docket No. 141 Ex. L.

[74] Docket No. 153 Ex. 9, at 24:22–25:15.

[75] *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975).

[76] *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

1. *Freedom of Association*

"The First Amendment protects the right of a public employee to join and participate in a labor union."[77]  Public employee claims for retaliation based on protected First Amendment activity are subject to the four-part *Pickering/Connick* test.[78]

> The *Pickering/Connick* test requires the plaintiff to establish three factors: (1) his First Amendment activity involved a matter of public concern; (2) his interests in the protected activity outweighed the employer's interest in regulating it; and (3) the protected activity was a substantial motivating factor in the employer's decision to take adverse action against him.[79]

"If the employee establishes these three factors, he wins unless (4) the employer establishes it would have taken the same action in the absence of the protected activity."[80]  Defendants argue that Plaintiff's claim fails under the first and third prongs, and that, under the fourth prong, they would have taken the same action in the absence of protected activity.

a. *Public Concern*

The parties dispute whether the first factor of the *Pickering/Connick* test applies here. The Tenth Circuit has recently stated that "[i]t is not clear whether the first factor applies to retaliation claims involving union association, particularly where there is not a collective bargaining agreement in place."[81]  A review of the relevant case law in this area is helpful in resolving this issue.

---

[77] *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1438 (10th Cir. 1990).

[78] *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)).

[79] *Id.* at 460–61.

[80] *Id.* at 461 (quoting *Maestas v. Segura*, 416 F.3d 1182, 1187 (10th Cir. 2005)) (alteration omitted).

[81] *Id.* at 461 n.17.

In *Morfin v. Albuquerque Public Schools*, the Tenth Circuit held that a public employee has a First Amendment right "to associate with the union of his or her choice, even one other than the exclusive bargaining agent."[82] The Court held that this right was clearly established. The court further stated that the "unconstitutionality of retaliating against an employee for participating in a union was clearly established."[83] As will be discussed, however, the court in *Morfin* did not address the issue of whether the public concern factor applies to claims involving union association.

In *Shrum v. City of Coweta, Oklahoma*,[84] the court held that the public concern factor did not apply in cases where "a public employer retaliates against an employee for engaging in acts protected by the collective-bargaining agreement"[85] In such cases, the public employer

> has contractually agreed to the legitimacy of the union and of its employees' association with the union. The public employer has presumably received the benefit of its bargain, and is estopped from claiming that its "interests as an employer" are inconsistent with the freedom of its employees to associate with the union or to file grievances in accordance with its procedures.[86]

The Court went on to state that "[n]ot only does the First Amendment freedom of association protect public employees from retaliation for participation in a union with which their employers have signed a collective-bargaining agreement, but as this Court held in *Morfin*, '[t]he

---

[82] *Morfin*, 906 F.2d at 1439 (internal quotation marks and alteration omitted).

[83] *Id.*

[84] 449 F.3d 1132 (10th Cir. 2006).

[85] *Id.* at 1139.

[86] *Id.*

unconstitutionality of retaliating against an employee for participating in a union [is] clearly established.'"[87]

In *Merrifield v. Board of County Commissioners for County of Santa Fe*,[88] the Tenth Circuit held that "the public-concern requirement applies to a claim that a government employer retaliated against an employee for exercising the instrumental right of freedom of association for the purpose of engaging in speech, assembly, or petitioning for redress of grievances."[89] The court distinguished *Morfin*, noting that it did not discuss "whether the public-concern requirement would apply to association-based retaliation claims."[90] As for *Shrum*, the court "noted that in the specific context of public-employee labor unions, we have 'rejected the requirement that a worker demonstrate that his association with the union be a matter of public concern.'"[91] But the Court made no further statements to reconcile its holding with that in *Shrum*, which brings the Court back to the statement in *Cillo* that "[i]t is not clear whether the first factor applies to retaliation claims involving union association, particularly where there is not a collective bargaining agreement in place."[92]

In a related case, this Court, per the Honorable Dustin B. Pead, found that the public concern element does apply "to freedom-of-association claims involving unions with which a

---

[87] *Id.* (quoting *Morfin*, 906 F.2d at 1439).

[88] 654 F.3d 1073 (10th Cir. 2011).

[89] *Id*. at 1081–82.

[90] *Id.* at 1084.

[91] *Id.* (quoting *Shrum*, 449 F.3d at 1138).

[92] *Cillo*, 739 F.3d at 461 n.17.

municipality has not entered a collective-bargaining agreement."[93]  The Court agrees that this is the best reading of the relevant case law.  While *Merrifield* did not involve public sector unions, it addressed the broader issue of whether the public concern requirement applies to association claims.  Moreover, the statement in *Cillo* suggests that the Tenth Circuit distinguishes between association claims involving unions with a collective bargaining agreement and those without, such as the FOP.  This is consistent with the facts and reasoning of *Shrum*, where the employer had "contractually agreed to the legitimacy of the union and of its employees' association with the union."[94]  In such a case, "the employer cannot rely on the *Pickering* test to avoid First Amendment scrutiny" if it "retaliates against an employee for engaging in acts protected by the collective-bargaining agreement."[95]  Though *Shrum* went on to state that the unconstitutionality of retaliating against an employee from participating in a union was clearly established, this statement comes from *Morfin*.  The Tenth Circuit distinguished *Morfin* in *Merrifield*, noting that it did not discuss whether the public concern requirement would apply in association-based retaliation claims.  Thus, *Morfin* does not answer the question presented here.  Further, *Shrum* must be considered on the facts presented in that case, which involved a union with a collective bargaining agreement.  Reading *Shrum* and *Merrifield* together, the Court concludes that the public concern factor does apply to association claims involving public sector unions where, as here, there is no agreement between the employer and the union.

---

[93] *Hollenbach v. Burbank*, No. 2:16-CV-918-DBP, 2017 WL 2242861, at *4 (D. Utah May 22, 2017).

[94] *Shrum*, 449 F.3d at 1139.

[95] *Id.*

A matter is of public concern where it may "be fairly considered as relating to any matter of political, social, or other concern to the community."[96] "In analyzing whether speech constitutes a matter of public concern, we may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."[97] "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import."[98] "Conversely, speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern."[99] Thus, for example, the Tenth Circuit has "held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration."[100] "While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, '[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests.'"[101]

---

[96] *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990) (quoting *Connick*, 461 U.S. at 146).

[97] *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000).

[98] *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988).

[99] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) (internal quotation marks omitted).

[100] *Id.*

[101] *Finn v. N.M.*, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting *Conaway*, 853 F.2d at 797).

In his deposition, Plaintiff stated that he joined the FOP to obtain automatic legal representation in disciplinary matters. He "was narrowly focused on the legal representation."[102] Based upon this, Defendants argue that Plaintiff's association with the FOP does not touch on any matter of public interest. Rather, he joined the FOP to obtain legal representation during internal disciplinary proceedings.

Plaintiff disputes that his association was so narrowly focused. To support his argument, Plaintiff relies on the March 12, 2012 Notice of Claim submitted to the City by his counsel. In the Notice of Claim, Plaintiff's counsel stated that Plaintiff joined the FOP "[a]fter witnessing the way the police administration persecuted Lt. Fred Louis, the only African American Lieutenant."[103] In his deposition, Plaintiff similarly mentioned the Department's treatment of Mr. Louis.[104] He went on to state that the treatment of Fred Louis prompted him to join the FOP to obtain legal representation.[105]

Discrimination and corruption are clearly matters of public concern. Plaintiff stated that he witnessed how the Department treated Fred Louis, an African American, and was concerned that the same thing could happen to him. As a consequence, he joined the FOP. While Plaintiff's motivating factor for joining the FOP was to obtain legal counsel in disciplinary proceedings, the purpose of that counsel was to protect him against discrimination and corruption at the hands of the Department. However, his association is nevertheless focused on an internal

---

[102] Docket No. 141 Ex. J, at 39:16–17.

[103] *Id.* Ex. T, at 3.

[104] *Id.* Ex. J, at 11:21–12:8.

[105] *Id.* at 12:9–21.

personnel matter that was personal in nature.[106]  Plaintiff did not join the FOP to expose larger

issues of discrimination and corruption in the Department and there is no record evidence in this

case that the FOP was formed for the purpose.

Plaintiff points to the allegations in a complaint in a related action wherein a former

plaintiff, Gregory Hollenbach, alleges that he created the FOP to address corruption between the

Department and the Salt Lake Police Association ("SLPA").[107]  In that case, Magistrate Judge

Pead concluded that Mr. Hollenbach had adequately pleaded the public concern element.[108]

However, this case is not before the court on a motion to dismiss and Plaintiff cannot simply rely

on the allegations in a complaint filed in a different case to satisfy his burden on summary

judgment.  In this case, there is no evidence, as opposed to a mere allegation, that the FOP was

formed from some broader purpose.  Nor is there evidence that Plaintiff's purpose in joining the

FOP was anything other than to obtain legal counsel in internal disciplinary proceedings.  The

only evidence before the Court is that the FOP was formed primarily to provide legal

representation to officers in internal disciplinary matters,[109] and Plaintiff joined the FOP for this

---

[106] *See Merrifield*, 654 F.3d at 1084 (finding that plaintiff failed to establish that his association with counsel involved a matter of public concern where he retained an attorney to represent him in a disciplinary matter).

[107] At all relevant times, the City recognized the SLPA as the exclusive representative of the City's eligible non-management level police officers for purposes of collective bargaining. The SLPA also represented officers in internal affairs investigations.  Docket No. 141 Ex. O ¶ 4.

[108] *Hollenbach v. Burbank*, No. 2:16-CV-918-DBP, 2017 WL 5564589, at *4 (D. Utah Nov. 17, 2017).

[109] Docket No. 141 Ex. O ¶ 9; *Id.* Ex. P, at 12:4–19; *Id.* at 28:4–14; *Id.* at 54:7–9; *Id.* at 55:17–20.

reason.[110]  Therefore, the Court concludes that Plaintiff's association with the FOP does not involve a matter of public concern.

### b.   *Substantial Motivating Factor and Adverse Action*

Assuming Plaintiff can or does not have to meet the public concern prong, Defendants argue that his claim fails under the third factor.

### i.   Adverse Action

Defendants first argue that Plaintiff has failed to show that he suffered an adverse action. Adverse actions include, not only terminations, but also things like "promotions, transfers, recalls after layoff, and hiring decisions."[111]  The Tenth Circuit has held that removing job duties, giving written reprimands, giving low scores on a performance evaluation, and involuntarily transferring an employee to another facility (though with the same title and responsibilities) constitute adverse employment actions under the First Amendment.[112]

The Tenth Circuit's decision in *Dill v. City of Edmond, Oklahoma*,[113] is instructive.  In that case, the plaintiff, a police officer, voiced concerns about the handling of a homicide investigation.  Following his complaints, the plaintiff was transferred from detective to patrol officer and his work schedule was altered.  The Tenth Circuit held "that Plaintiff's transfer and change in work schedule as alleged falls within the ambit of unconstitutional detrimental

---

[110] *Id.* Ex. J, at 39:16–17; *Id.* at 12:9–21.

[111] *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1237 (10th Cir. 2009) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990)).

[112] *Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999).

[113] 155 F.3d 1193 (10th Cir. 1998).

action."[114]  The court concluded "that Defendants should have known that it would be unconstitutional to transfer Plaintiff from detective to patrol officer and to alter his weekend duty schedule in retaliation for Plaintiff's speech."[115]

Based upon this case law, the Court concludes that Plaintiff has presented sufficient evidence to withstand summary judgment on the issue of whether Defendants' actions were adverse.  Like the plaintiff in *Dill*, there is evidence that Plaintiff was transferred and had his schedule altered after he began his association with the FOP.  These actions are sufficiently adverse to survive this portion of the third prong.  Thus, the Court must turn to whether Plaintiff's union activity was a substantial motivating factor in Defendants' decisions.

### ii.  Substantial Motivating Factor

"To withstand summary judgment at step three . . . an employee must produce evidence linking the employer's action to the employee's speech."[116]  "[T]he employee must show the protected speech played a substantial part in the employer's decision to adversely alter the employee's conditions of employment."[117]  "Speculation or hunches amidst rumor and innuendo will not suffice.  Nor can a plaintiff sustain his burden at step three simply by showing that the elimination of the protected activity may have been welcomed by the defendants[.]"[118]

> Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive.  But temporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision.  An employer's knowledge of the protected speech, together with *close*

---

[114] *Id.* at 1205.

[115] *Id.*

[116] *Maestas*, 416 F.3d at 1188.

[117] *Id.*

[118] *Id.* at 1189 (internal quotation marks and citations omitted).

temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment. Other evidence of causation may include evidence the employer expressed opposition to the employee's speech, or evidence the speech implicated the employer in serious misconduct or wrongdoing. On the other hand, evidence such as a long delay between the employee's speech and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link.[119]

Here, Plaintiff has failed to present any evidence that his association with the FOP was a substantial motivating factor for any of the adverse actions of which he complains. Importantly, both Defendants Burbank and Doubt stated that they were unaware of Plaintiff's FOP membership until spring 2012.[120] While Plaintiff has presented testimony that there was a general knowledge of who was an FOP member, he has failed to present any evidence to dispute the statements from Burbank and Doubt that they specifically were unaware of Plaintiff's FOB membership. Thus, there is no evidence that any adverse actions prior to this time were motivated by Plaintiff's status as an FOP member.

Plaintiff has also failed to present any evidence that any alleged adverse actions that occurred after Burbank and Doubt were informed of his FOP membership were motivated by Plaintiff's association.[121] Defendant Doubt has submitted a declaration stating that Plaintiff's FOP membership was not mentioned in his discussions with Burbank concerning Plaintiff's

---

[119] *Id.* (internal citations omitted).

[120] Docket No. 141 Ex. I ¶ 16; *Id.* Ex. R ¶ 4.

[121] Plaintiff complains of actions taken, not only by Defendants Burbank and Doubt, but other individuals as well. However, "[i]n order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Plaintiff has failed to show that the named Defendants had any role in the actions taken by others.

transfer out of the Facilities Division.[122] Moreover, after Plaintiff was transferred out of the

Facilities Division in August 2011 he was not under the supervision of Defendant Doubt and

there is no evidence that Doubt played any role in any of the alleged adverse actions occurring

after this point.

Turning to Defendant Burbank, Plaintiff has presented testimony from others suggesting

that Burbank may have been frustrated by the existence of the FOP and that there was some

amount of discomfort with FOP members bringing in attorneys to disciplinary proceedings.[123]

This evidence is insufficient to withstand summary judgment. Plaintiff has presented nothing

more than mere speculation and conjecture that Burbank was frustrated by the FPO and that its

existence may have made his job as Chief more difficult, but there is no evidence that any of the

adverse actions of which Plaintiff complains were motivated by his FOP membership. As stated

above, mere speculation is not sufficient. Nor is it sufficient to show that Burbank's job as Chief

may have been easier without the presence of the FPO. Plaintiff must provide evidence linking

Defendants' actions to his association, which he has failed to do.

Plaintiff has no direct evidence of a retaliatory motive on the part of Burbank. While

people may have speculated that Burbank was frustrated by the existence of the FOP, Burbank

testified that the establishment of the FOP did not bother him at all.[124] Further, there is no close

temporal proximity to Plaintiff's FOP association and the adverse actions at issue. Burbank

learned of Plaintiff's FOP association in March 2012. The alleged adverse actions taken

---

[122] Docket No. 141 Ex. I ¶ 15.

[123] Docket No. 153 Ex. 9, at 46:21–47:4; *Id.* at 53:17–54:11; Docket No. 141 Ex. Q, at 28:4–10.

[124] Docket No. 141 Ex. 1, at 54:9–22.

thereafter occurred no earlier than January 2013. The Tenth Circuit has "repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months."[125]

Moreover, there is no evidence that FOP members were, in general, treated less favorably than non-members. There is testimony from one individual who believed that being a member of the SLPA tended to allow for promotion,[126] but this does not help Plaintiff's case. The evidence shows that officers were encouraged to join both the SLPA and the FOP and many did.[127] Thus, the fact that SLPA members were promoted does not show that FOP members were not. In fact, the record reflects that a number of FOP members were given promotions and/or given highly desirable assignments.[128] The fact that FOP members were promoted fails to support an inference of causation.[129] Further, the two captains who, like Plaintiff, were not promoted to Deputy Chief—Kyle Jones and Carrol Mays—were not members of the FOP. The fact that two non-FOP captains were also not promoted tends to negate an inference of discrimination based on Plaintiff's association with the FOP.

Additionally, there is evidence that the FOP, as an organization, was able to engage in many of the same activities as the SLPA, with the exception of those activities that were reserved

---

[125] *Lauck v. Campbell Cty.*, 627 F.3d 805, 815 (10th Cir. 2010).

[126] Docket No. 141 Ex. Q, at 33:11–34:16.

[127] *Id.* Ex. P, at 58:15–59:4; *Id.* Ex. O ¶ 10.

[128] *Id.* Ex. O ¶¶ 28–36.

[129] *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1287 (10th Cir. 2003) (finding no inference of causation on claim of retaliation for protected speech where another employee also spoke on the same topics, but was not terminated); *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1200 (10th Cir. 2000) (finding no inference of causation where employees hired to replace plaintiff were past union presidents).

to the SLPA under the Memorandum of Understanding with the City. The FOP was allowed to use city facilities to hold meetings and use city email and Department mailboxes to communicate with officers. Additionally, after a few months, the City allowed officers to automatically deduct FOP dues from their paychecks. At best, Plaintiff has shown that there may have been some confusion and maybe even hostility toward the FOP at the time of its inception. However, he has failed to present any evidence suggesting that his FOP membership or association played a substantial part in Defendants' employment decisions.

### c. Same Action

To satisfy their burden at summary judgment as to this factor, Defendants must demonstrate that the evidence viewed in light most favorable to Plaintiff shows they would have taken the same actions against him absent his union activity.[130] For substantially the same reasons discussed above, Defendants have met their burden. Defendants have provided a number of non-discriminatory reasons to justify the actions taken in relation to Plaintiff's employment. There is no evidence that Plaintiff's FOP membership had anything to do with those actions and there is no evidence that those actions would have been different had Plaintiff not been associated with the FOP. As a result, Plaintiff's First Amendment claim fails.

### 2. Conspiracy

A conspiracy claim under § 1983 requires Plaintiff to "prove not only a conspiracy, but also an actual deprivation of rights."[131]

---

[130] *Cillo*, 739 F.3d at 466.

[131] *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)).

Plaintiff's conspiracy claim fails because he has failed to show a deprivation of a constitutional right, as discussed above. Moreover, Plaintiff has failed to show the existence of a conspiracy. To demonstrate the existence of a conspiracy, Plaintiff must show "that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."[132] There is no such evidence here.

### 3. Failure to Train and Supervise

Plaintiff brings a claim against the City based on its failure to train and supervise. A municipality may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[133] However, "local governments are responsible only for 'their own illegal acts.'"[134] "They are not vicariously liable under § 1983 for their employees' actions."[135] However, liability can only be imposed on the City if a constitutional violation occurred.[136] "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[137]

As discussed, no constitutional violation occurred here. Therefore, Plaintiff's claim against the City fails.

---

[132] *Id.* at 702 (internal quotation marks and alteration omitted).

[133] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 692 (1972)).

[134] *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

[135] *Id.*

[136] *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

[137] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

D.    CONSTRUCTIVE DISCHARGE

   1.    *Title VII*

Constructive discharge is a discrete act of discrimination for which Plaintiff's administrative remedies must be exhausted under Title VII.[138]  Plaintiff resigned on December 16, 2014.  The limitations period for a constructive discharge claim under Title VII begins when the employee resigns.[139]  Thus, any Charge of Discrimination must have been filed by October 12, 2015.  Plaintiff failed to file an EEOC charge alleging constructive discharge.  Having failed to do so, this claim is barred under Title VII.

   2.    *Section 1981*

Unlike Title VII, Plaintiff was not required to exhaust administrative remedies under § 1981.[140]  "The plaintiff's burden in establishing constructive discharge is substantial."[141] "[A]n employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant."[142]  Instead, "[a] constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign."[143]  "The conditions of

---

[138] *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009).

[139] *Green v. Brennan*, ---U.S.---, 136 S.Ct. 1769, 1774 (2016).

[140] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 n.9 (10th Cir. 1997).

[141] *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008).

[142] *Id.* at 981.

[143] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'"[144]

"In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged."[145] "Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship."[146] "We judge the voluntariness of an employee's resignation under an objective standard, looking to whether his or her working conditions were so intolerable that a reasonable employee would have had no other choice but to quit."[147]

Here, Plaintiff voluntarily resigned and the evidence does not demonstrate that his working conditions were so intolerable that a reasonable employee would have no choice but to quit. Plaintiff complains of a number of actions taken over the years. However, none of these actions, either individually or collectively, made working conditions so intolerable that a reasonable person in Plaintiff's position would feel forced to resign. Indeed, even after all of this, Plaintiff stayed on to the end of the year so that he could maximize his retirement benefits.[148] Therefore, summary judgment is appropriate on this claim.

E.      UTAH PROTECTION OF PUBLIC EMPLOYEES ACT

The Court's jurisdiction in this case is based on federal question, with supplemental jurisdiction over Plaintiff's claim under the Utah Protection of Public Employees Act. As set

---

[144] *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (quoting *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)).

[145] *Exum*, 389 F.3d at 1135.

[146] *Id.*

[147] *Id.* at 1135–36.

[148] Docket No. 141 Ex. D, at 150:25–151:12.

forth above, all claims based on federal question have been resolved in Defendants' favor, leaving only this claim under Utah law. The Tenth Circuit has suggested "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[149] Having considered the relevant factors,[150] the Court will decline to exercise its discretion over Plaintiff's remaining state-law claim and will dismiss it without prejudice.

F.      INJUNCTIVE RELIEF

Finally, Plaintiff has a separate cause of action for injunctive relief, which requests the City be enjoined from taking certain actions relative to the FOP. Plaintiff did not respond to Defendant's request for summary judgment on this claim, but it must be dismissed for a more fundamental reason.

Injunctive relief is a remedy, not a separate cause of action, available where a party prevails on a separate legal theory.[151] Because Plaintiff's federal-law claims fail and the Court declines to exercise supplemental jurisdiction over his remaining state-law claim, there is no

---

[149] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

[150] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.").

[151] *Romstad v. City of Colo. Springs*, 650 F. App'x 576, 585 n.7 (10th Cir. 2016) ("An injunction is not an independent cause of action; it is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (internal quotation marks omitted).

prevailing legal theory that would permit Plaintiff to obtain injunctive relief. As a result,

Plaintiff's request must be denied.

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 140) is

GRANTED IN PART as set forth above. It is further

ORDERED that Plaintiff's Motion to Strike (Docket No. 165) is DENIED.

DATED this 6th day of June, 2018.

BY THE COURT:

Ted Stewart
United States District Judge